No. 9720.

STEVENS ET AL. *v.* TUCKER ET AL.

PRINCIPAL AND SURETY.—*Contribution.—Guardian's Bond.*—A guardian, having given bond as such, with surety, afterwards, on the death of the surety and upon order of the court, gave an additional bond with other sureties, conditioned like the first, but with a larger penalty.

*Held,* that the sureties on both bonds were co-sureties, and, as such, mutually liable to contribution.

SAME.—*Decedents' Estates.—Liability of Heirs for Debts.—Statute Construed.*— Where one of several co-sureties of a guardian dies, and a liability on the bond afterward accrues, which the surviving sureties are compelled to pay, by reason of the insolvency of the principal, and this liability can not be known until after final settlement of the estate of the deceased surety, suit for contribution may be maintained against his heirs after such final settlement. Such case was not intended to be controlled by the statute, R. S. 1881, section 2442.

From the Washington Circuit Court.

*S. B. Voyles, H. Morris, D. M. Alspaugh* and *J. C. Lawler,* for appellants.

*A. B. Collins, H. Heffren* and *J. A. Zaring,* for appellees.

BLACK, C.—This cause has been in this court once before. The opinion of the court is reported in *Stevens* v. *Tucker,* 73 Ind. 73.

In accordance with the instruction then given by this court,

the court below sustained the demurrer to the complaint, and thereupon the appellees filed an amended complaint, which al-- leged, in substance, that Sarah J. Allen, widow of Joseph M. Allen, deceased, who was the son of Thomas W. Allen, was,. by the court of common pleas of Washington county, Indi- ana, on the 15th of December, 1865, duly appointed guardian of the persons and property of Frank, Charles and Heber Allen, minors, children and heirs of said Joseph, and grand- children of said Thomas; that said Sarah then executed and filed in said court her bond as such guardian, in the sum of $8,000, with said Thomas as her surety thereon; that said Thomas died intestate on the 15th of May, 1866; that of the defendants, who are all appellants, six are his children and three are his said grandchildren, two of the defendants being the husbands of two of said children, and the remaining one of the defendants being guardian of one of said grandchildren, the others having arrived at majority; that, at the time of said Thomas W. Allen's death, said children and grandchildren were living; that said Thomas also left surviving his widow, who, without having again married, has since died, and an-- other child, who has since died unmarried and without issue; that said children and grandchildren, defendants herein, are the heirs at law of said Thomas; that at his death he left a large estate of money and other property, amounting to $20,- 000 in value, all of which was in said county; " that, after the decease of said Thomas W. Allen, Alva C. Trueblood was duly appointed administrator of the estate of said Thomas W. Allen, at said county, where he had died, and said Alva C. Trueblood, long before the commencement of this suit, as such administrator, fully settled said estate, having fully ad- ministered upon the same, and was duly and fully discharged · by the court of proper jurisdiction; that, after the settlement of said estate, a large amount of money was left for distribu- tion among said heirs." It is alleged that a specified sum of money was received by said widow " in such distribution," and that an amount stated was received by each of the defend--

ant children and grandchildren, "as heirs at law of said decedent;" that afterward the real estate belonging to said estate of Thomas W. Allen, deceased, was, by action of partition in the proper court, sold and divided among said heirs, and the amount received by each of said heirs in said division is stated; also the gross amount received from said estate by each of said heirs, defendants herein, is stated; and the amount received by all, being $6,247.05.

. It is alleged that on the 12th of December, 1866, said Sarah J. Allen was required by the court of common pleas of said county to give an "additional bond," as guardian of the persons and estates of said Frank, Charles and Heber Allen, and on that day said Sarah, as principal, and the plaintiffs herein, Thomas M. Tucker and John Manly, who are the appellees, as her sureties, jointly and severally executed to the State of Indiana an additional bond, as was required and ordered by said court, in the penal sum of $12,000; that said Sarah continued to act as such guardian from the date of her appointment as aforesaid until the 9th of November, 1874, when she was removed from said guardianship, by the circuit court of said county, and had received as such guardian for her wards $3,000; that afterwards, on the — day of June, 1875, Warder W. Stevens was duly appointed guardian of said Frank, Charles and Heber Allen; that said Sarah failed, neglected and refused to pay over to said Stevens, or to any one else legally entitled thereto, said sum of money in her hands as such guardian and belonging to said wards, and never did pay the same to any one authorized to receive it; that, by reason of the non-payment of said sum to her successor, suit was instituted upon said additional bond, on the relation of Warder W. Stevens, guardian as aforesaid, against said Sarah J. Allen and the appellees, obligors upon said additional bond; and the State, on the relation of said Stevens as such guardian, recovered a judgment against said Sarah and the appellees upon said bond, in the sum of $3,000.

A copy of this judgment is filed with the complaint, of

which it is sought to make it a part as an exhibit. It is alleged that said Sarah now is, and at the time of the rendition of the judgment was, and ever since has been, wholly and notoriously insolvent; that the appellees were compelled to pay, and did pay, said judgment in full. And the appellees ask judgment compelling said defendants and heirs at law of said Thomas W. Allen, deceased, surety on said original bond, to pay the appellees said Thomas W. Allen's contributive share of said $3,000.

A motion to strike out the exhibit attached to the complaint, for the reason that the judgment of which it purported to be a copy was not the foundation of the action, was overruled, and this ruling is assigned as error. Some question is made by counsel as to whether this action of the court is properly presented in the record. This is immaterial, for whether the judgment was or was not the foundation of the action, it was not necessary to make a transcript thereof a part of the complaint, and such transcript and all reference to it in the complaint should be regarded as mere surplusage; and, therefore, the proceedings are not so affected by it as to make the refusal to strike it out an available error. *St. Louis, etc., R. W. Co.* v. *Valirius,* 56 Ind. 511; *Richardson* v. *Jones,* 58 Ind. 240; *Hay* v. *State, ex rel.,* 58 Ind. 337.

The appellants demurred to the amended complaint for want of the statement of sufficient facts to constitute a cause of action against the appellants or either of them. The demurrer having been overruled, the appellants answered in two paragraphs. The first paragraph was the general denial. By the second paragraph it was alleged that at the time the estate of said Thomas W. Allen, deceased, was finally settled, and for more than six months immediately prior to said final settlement of said estate, the appellees were each more than twenty-one years of age; that the appellees during all of said time had been and still were men of sound mind, and labored under no legal disability of any kind, and each of them had been a resident of said county for thirty years last past; that, before this suit

was commenced, more than one year had elapsed after the estate of said Thomas W. Allen, deceased, was finally and fully settled. The appellees demurred to the second paragraph of the answer, and the demurrer was sustained. The cause was tried by the court, a written statement of facts, which is set out in a bill of exceptions, being, by agreement, submitted to the court as the evidence. The court found for the appellees. The appellants moved for a new trial, the only causes assigned which are recognized by the statute being that the finding was not sustained by sufficient evidence, and was contrary to law. The motion was overruled, and judgment was rendered in accordance with the finding.

It is claimed, on behalf of the appellants, that the defect in the complaint, pointed out in the opinion of this court when the cause was here before, was not removed by the amendment made; that the amended complaint does not sufficiently show that the estate of Thomas W. Allen, deceased, had been finally settled before the commencement of this action. It was provided in the act governing the settlement of this decedent's estate (2 R. S. 1876, p. 535, section 112, *et seq.*), that, at the end of one year from the first issuing of letters, the executor or administrator of every estate should make an exhibit of all his proceedings in the premises, and if there was sufficient money on hand the court should order the payment of the claims against the estate, and, unless there were claims in favor of such estate uncollected or undisposed of according to law, should order entered a final settlement, if there should be pending against said estate no claims not allowed and filed according to law. Provision was made for continuing the final settlement in certain contingencies, and as the interests of the estate might require. And it was provided (sec. 116), that after the debts and legacies of an estate and charges of administration were paid, and all claims in favor of such estate were disposed of according to law, the executor or administrator should be discharged from the further ad-

ministration thereof, and that no final settlement should be revoked or re-opened, except by appeal to the circuit court, or for fraud or mistake.

By section 137, *et seq.*, of said act, provision was made for distribution under the order of the court of the surplus remaining after the payment of all debts of an intestate, at the term when final settlement was made, or after notice, if the persons entitled to distributive shares should not be present in person or by attorney or guardian, and assent at the term of final settlement.

In *Fleece* v. *Jones*, 71 Ind. 340, it is said: " The statute contemplates, as we construe its provisions, that there shall not be, in any event, a final settlement of a decedent's estate, until after the expiration of one year from the time letters testamentary, or letters of administration, were first issued thereon; and, as a general rule, it may well be said, that, until such settlement, there can not be, and ought not to be, any distribution of the assets of the estate to the general distributees of the decedent."

In *Dufour* v. *Dufour*, 28 Ind. 421, it was held that the words " final settlement," as used in said section 116, did not mean the mere ascertainment of the final balance of cash in the hands of an executor, upon his making what purported to be his final report, and the order that final settlement be made, and that the amount so found to be in his hands be paid out according to the directions of the will; but a payment of that balance was also included, so that nothing should remain to be done by him in his fiduciary capacity, and so that he might be fully discharged from his trusts, as having completely performed them.

*Rinard* v. *West*, 48 Ind. 159, was an action predicated on section 178 of said act (hereinafter quoted), and it was sought thereby to charge a debt of a decedent upon the defendant as his heir. There was an allegation in the complaint that a person named became administrator of said decedent's estate, " and fully administered her estate more than six months be-

fore the plaintiff returned to the State of Indiana." It was held that this was not equivalent to an allegation that a final settlement of the estate had been made; that the final settlement is an act done in, and sanctioned by, the court after the estate has been fully administered, reference being made to said section 112, *et seq.*

In *Parsons* v. *Milford*, 67 Ind. 489, it was held that the final settlement contemplated by section 116 of said act had reference to the ultimate completion of the business of the trust, and to the final order based upon such completion, which took the estate out of court, and not to the last report of an outgoing executor or administrator, where he resigned before his trust had been fully performed, taking himself only, and not the estate, out of court.

Such a settlement, which does not close the business of the estate in the hands of the administrator, is not a final settlement of the estate. *Lang* v. *State, ex rel.,* 67 Ind. 577.

Upon the former appeal of this cause (73 Ind. 73), it was said by Woods, J., that "Until there has been an administration fully accomplished, and the administrator discharged, a suit against the heirs on the theory of this complaint can not be maintained."

In the complaint now under examination, it is shown that the administrator had been discharged by the proper court from the further administration of the estate, not after a partial administration thereof, but after he had fully administered thereon; and that the surplus remaining after settlement of the estate had been distributed to the proper distributees as such. Certainly nothing remained to be done by an administrator or by the court in the settlement of such estate. There was an ultimate completion of the business of the trust. What was done took the estate out of court. Though the word "final" was not used in describing it, the settlement stated constituted a final settlement. To decide otherwise would seem to be too exacting for the fair administration of justice.

Assuming, for the present purpose, that, upon the facts

stated in the complaint, the appellees and Thomas W. Allen, deceased, are to be regarded as co-sureties, and that, upon default of the principal, the guardian, and payment by the appellees, as stated in the complaint, of the amount secured, the appellees would have been entitled to contribution from the estate of said Thomas, were the settlement thereof still pending, yet it is insisted that the complaint is insufficient, because it does not aver that the plaintiffs, "six months prior to the final settlement of said estate, were insane, infants, or out of the State of Indiana." The question of the need of such a qualification to maintain the suit is presented by the answer, and is involved in the agreed statement of facts used as evidence.

By section 62 of the act in relation to the settlement of decedents' estates, 2 G. & H. 501, it was provided, that "A succinct statement of the nature and amount of every claim, whether due or not, against the estate of any decedent, except judgments which are liens upon the decedent's real estate, and mortgages of his real or personal estate obtained and executed in his lifetime, and expenses of administration, must be filed in the office of the clerk of the proper court of common pleas, within one year from the date of the first appointment of an executor or administrator therein, and notice thereof; or no costs shall be recovered therein against such executor or administrator; * * and if such claim be not due, interest thereon shall be rebated, and after the expiration of one year from such appointment and notice, if such claim be not filed at least thirty days before final settlement of the estate, it shall be barred, except as hereinafter provided in case of the liabilities of heirs and devisees."

The provision in case of the liabilities of heirs and devisees thus referred to is contained in section 178, *et seq.*, of said act. By said section 178 it was enacted that "The heirs, devisees and distributees of a decedent, shall be liable to the extent of the property received by them from such decedent's estate, to any creditor whose claim remains unpaid, who, six months

prior to such final settlement was insane, an infant, or out of the State; but such suit must be brought within one year after the disability is removed."

It is insisted that the appellees can not maintain this suit, because they do not show themselves to be creditors whose claims are provided for by said section 178, and because they are shown not to be such creditors.

In *Ratcliff* v. *Leunig*, 30 Ind. 289, the payee of a promissory note, after having filed it against the estate of the deceased maker, and, upon final settlement of said estate, having recovered but a portion of the claim—said estate being insolvent—brought suit for the unpaid balance of the note against the devisees of the deceased surety thereon, his estate having also been finally settled at the term at which the estate of the maker was settled. It was held that there could be no recovery against the devisees, there being nothing in the complaint to bring the case within said section 178; that the fact that it could not be known what portion of the claim would be paid by the estate of the deceased maker until final settlement thereof did not prevent or excuse the holder of the note from filing the claim against the estate of the deceased surety while it was in course of settlement.

In *Cincinnati, etc., R. R. Co.* v. *Heaston*, 43 Ind. 172, David Heaston had given his note in 1864, payable to the railroad company whenever it should cause the cars to run on its road to Winchester, provided the road should be put in running order to Winchester on or before the 1st of September, 1872. Said David died intestate, in 1865. His estate was administered upon, and was finally settled in 1869. Suit was brought in 1871 upon the note against his heirs, who had received property from his estate, the railroad company having caused the cars to run to Winchester for the first time in 1870, and the road having been put in running order to Winchester. It was held that the action could not be maintained; that, though the claim was not due at the final settlement of the estate, the statute (sec. 62) made provision for such a case,

and the note might have been filed, and the settlement of the estate would then have been postponed until the cars ran to Winchester in 1870, unless some one interested had given bond as provided by statute; that the plaintiff, not having filed its claim against the estate, and not being shown to be within the provisions of section 178, *supra,* was barred of any right of action against the heirs of the maker of the note.

In *Voris* v. *State, ex rel.,* 47 Ind. 345, it was held, upon a review of authorities, that the estate of a surety upon a guardian's bond is liable for a default of the guardian occurring subsequent to the death of the surety. Upon the question whether the heirs of a deceased surety upon a guardian's bond were liable for a defalcation of the guardian which occurred after the final settlement of such decedent's estate, they having received property from the estate, and the action against them being brought upon the bond executed by such decedent as surety, on the relation of the successor in such trust, it was held, after reciting sections 62 and 178 of said act, that, as it appeared that the action was brought by the guardian of one of the former wards of said defaulting guardian, said ward being an infant six months prior to said final settlement, and still an infant, the provisions of said sections rendered the filing of the claim against the estate of the deceased surety unnecessary, and the action against the heirs maintainable, the relator being a creditor of the deceased surety within the meaning of said section 178, though the defalcation of the guardian occurred after the final settlement of the surety's estate.

*Blair* v. *Allen,* 55 Ind. 409, was an action for a breach of a covenant of warranty in a deed against the heir of the warrantor, the cause of action upon the covenant having arisen after the final settlement of the deceased warrantor's estate, from which the defendant heir had received property. The court having shown that lineal and collateral warranties have been abolished with us, and that no obligation has been especially provided by law to take their place, and that the cause of action might have been filed as a claim against the dece-

dent's estate as provided by said section 62, if it had accrued in time, but could not have been so filed because it arose too late, and having referred to the fact that the complaint (the question of the sufficiency of which was before the court) did not bring the plaintiff within the provisions of said section 178, it was held, "upon full and careful consideration," that the Legislature could not have meant to leave a meritorious class of rights without remedy, and that when, from the nature of the claim, the creditor can not comply with said section 62 or 178, the heir, devisee or distributee shall be liable, on the covenant or agreement of the decedent, to the extent of the property received by him from the decedent's estate. It is said: "The law does not require that to be done which can not be done; and no one shall lose his remedy for not doing what can not be done."

If the appellees may be regarded as co-sureties of said Thomas W. Allen, and if their cause of action, arising out of the discharge by them of the obligation, had arisen while said Thomas was alive, or after his death and during the settlement of his estate, they could recover thereon. And if they had been under a disability mentioned in said section 178, they could have their action against the heirs, who received property from the decedent's estate, though their cause of action did not arise until after the final settlement of that estate. *Voris* v. *State, ex rel., supra.* The appellees not having filed their claim against the estate of said Thomas W. Allen, as provided in said section 62, and not being such creditors as are provided for by said section 178, it is plain that their action is not founded upon any statute. *Ratcliff* v. *Leunig, supra; Leonard* v. *Blair,* 59 Ind. 510.

But are they, though their claim is thus meritorious, without remedy? It would have been practically impossible for them to have filed a claim against said decedent's estate. Whether they would ever have a claim for contribution, and if so, the amount thereof, were contingencies at the time of said final settlement, and were not made certainties until the

successor of said defaulting guardian had recovered a judgment on said additional bond, and they had been compelled, by reason of the insolvency of the principal, to pay the judgment. They could not have filed "a succinct statement of the nature and amount" of the claim, as required by statute. While the settlement of said estate was pending, the present cause of action was not simply a claim which was not then due within the meaning of the statute, the interest upon which might be rebated. It then depended upon future circumstances which they could not control or hasten, and which were not bound to happen, if ever, within a certain time. No allowance could have been made by the court in such settlement to the appellees as claimants, and the facts which they could have stated involved such contingencies that they could not have furnished a proper pretext for delaying the settlement of the estate.

The case of the appellees was like that of one bound by a contract of indemnity, the breach and the damages being wholly uncertain. See *Hall* v. *Martin,* 46 N. H. 337, quoted in *Voris* v. *State, ex rel., supra.*

It is true that the appellees might have procured their discharge from future liability as sureties while the guardian was still solvent (2 R. S. 1876, p. 598, section 26), but it can not be the policy of the law, by depriving such sureties of remedy against the estate of their co-surety, to drive them to such a course. Such a menace would tend to prevent the procurement of other sureties by the guardian. When, pending the settlement of a decedent's estate under said statute, a person, not under a disability mentioned in said section 178, had a claim which, whether due or not due, was of such a nature that it might be filed and allowed as provided by said section 62, *et seq.*, it would certainly be barred if not filed as so provided. The Legislature may thus provide the mode of the remedy, and restriction of the creditor to the mode provided is not a deprivation of a right.

Is the holder of an equally meritorious claim not so pro-

vided for to be deprived of all remedy out of the property of the settled estate? It need not be said that it is beyond the power of the Legislature to deprive the appellees of all remedy, but it may well be presumed that it was not intended by the Legislature, in the enactment of the statutory provisions under discussion, to deprive any one of a well founded right by forbidding a remedy therefor.

The fact, that the three grandchildren of said decedent were the beneficiaries in the suit that resulted in the judgment against the appellees as sureties upon the additional bond, does not, as claimed by the appellants, forbid the maintenance of this action against said grandchildren. That judgment was rendered because of the default of their guardian, without any regard to the source from which their estate, lost through such default, was derived. Here they are sued, not as wards of the relator in the suit wherein said judgment was rendered, but as heirs of Thomas W. Allen, deceased. It is not an action to recover back the money recovered by them as such wards through said judgment, but an action to recover money received by them from said decedent's estate as his heirs.

It remains to show that the appellees and said Thomas W. Allen were co-sureties, and liable to each other as such for contribution, as we have thus far assumed. It has already appeared that the liability of said Thomas as surety continued after his death, and did not cease with the final settlement of his estate, but was thereafter a liability of his heirs who had received the property of his estate.

The bond upon which the appellees became sureties was an "additional bond." It was not a "new bond," given after application for the release of the original surety. 2 R. S. 1876, p. 598, sec. 26; 2 R. S. 1876, p. 504, sec. 29. There was no order of court releasing the original surety. There was no application for such release. The court required the guardian to give an additional bond, and the bond executed by the appellees purported upon its face to be given in pursuance of an order of the court requiring an additional bond. The

second bond was not given to indemnify the surety upon the first. The bonds were conditioned in the same terms.

Where the penalty of the original bond of a guardian is not large enough to cover the assets in his hands, the court may require him to execute an additional bond. *Potter* v. *State, ex rel.,* 23 Ind. 550. See *People* v. *Curry,* 59 Ill. 35; *Loring* v. *Bacon,* 3 Cush. 465. The court having exercised this power, it will be presumed that there was proper occasion therefor.

Contribution between sureties may be enforced, though no contract between them exists incurring such liability, and whether they are jointly and severally bound, or only severally, or whether their suretyship arises upon the same obligation or instrument, or divers obligations or instruments, if all the instruments are for the same identical debt. *Dering* v. *Earl of Winchelsea,* 1 Cox, 318; S. C., 2 B. & P. 270; Story Eq. Jur., secs. 493, 495.

The principle is universal that the right of contribution is founded in doctrines of equity. It does not depend upon contract. *Stirling* v. *Forrester,* 3 Bligh, 575; Story Eq. Jur., sec. 495, note 2. It results from the maxim that equality is equity. 1 Pom. Eq. Jur., sec. 411.

If one of two co-sureties dies, the representative of the deceased party may be compelled to contribute his share to the surviving surety, who shall have paid the whole debt. 1 Story Eq. Jur., sec. 497.

Where there are several distinct bonds, with different penalties, and a surety upon one bond pays the whole, the difference between the penalties of the bonds will make no difference in the contribution between the sureties, provided the penalty of each bond exceed the debt, or the purpose of each is to bind all the sureties to the extent of the whole debt. Story Eq. Jur., secs. 497, 497*a*, and notes.

The bond executed by the appellees was an additional and cumulative security. The original surety was not discharged by the giving of the new bond, but both bonds remained

valid, and the sureties were all to be deemed co-sureties, bound as such to the wards, and liable to contribution between themselves. *Bell's Adm'r* v. *Jasper,* 2 Ired. Eq. 597; *Cobb* v. *Haynes,* 8 B. Mon. 137; *Loring* v. *Bacon, supra; Commonwealth* v. *Cox,* 36 Pa. St. 442; *Wood* v. *Williams,* 61 Mo. 63; *Hutchcraft* v. *Shrout,* 1 T. B. Mon. 206 (15 Am. Dec. 100); *Jones* v. *Blanton,* 6 Ired. Eq. 115.

As the right of contribution does not depend upon contract between the sureties, but rests upon principles of equity, and as the liability growing out of Thomas W. Allen's suretyship was not impaired by his death or the settlement of his estate, the fact that he was dead when the additional bond was executed does not release his estate from liability to contribute. The taking of the additional security did not injure his estate, but, on the contrary, relieved it of a portion of the burden it would otherwise have borne.

What we have said leads us to hold that the court, in overruling the demurrer to the complaint, in sustaining the demurrer to the second paragraph of the answer, and in overruling the motion for a new trial, did not err. We think the judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be, and it hereby is, affirmed, at the costs of the appellants.

Opinion filed at the May term, 1882.
Petition for a rehearing overruled at the November term, 1882.